IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 20, 2002

## STATE OF TENNESSEE v. JASON FISHER

**Direct Appeal from the Circuit Court for Blount County**
**No. C-11447     D. Kelly Thomas, Jr., Judge**

_____

**No. E2002-00335-CCA-R3-CD**
**October 24, 2002**
_____

The defendant pleaded guilty to six counts of forgery and was sentenced as a Range I, standard offender to an effective term of two years, which was suspended and ordered to be served on probation. Various probation violation warrants were filed, alleging that the defendant had failed to comply with the conditions of probation and, in general, was uncooperative with those in charge of supervising his sentence. Following a hearing on the fourth such warrant, the trial court revoked the defendant's probation and ordered him to serve the sentence originally imposed. The defendant appealed. Upon review of the record, we detect no abuse of the trial court's discretion and affirm the judgment.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Mack Garner, District Public Defender, Maryville, Tennessee, for the appellant, Jason Fisher.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Edward P. Bailey, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On April 5, 1999, the Blount County Grand Jury charged the defendant, Jason Thomas Fisher, with six counts of forgery. *See* Tenn. Code Ann. § 39-14-114 (1997). The charges involved three checks totaling $4,500, drawn on the account of O.J. Frisbie and cashed at First Tennessee Bank. Four counts were Class E felonies; two counts were Class D felonies.

On July 19, 1999, the defendant entered guilty pleas to all six charges, and a sentencing hearing was scheduled for September 13, 1999. The record on appeal does not include a transcript of the sentencing hearing. From the presentence investigation report, which is part of

the appellate record, we glean that at the time of sentencing, the defendant was a healthy, twenty-year-old male. He was earning $7.00 per hour at a temporary factory job. The defendant reported owning a pickup truck, living with his parents, and having no debt. He had been convicted previously of reckless driving when he was eighteen years old, reckless endangerment when he was nineteen years old, and bad check charges earlier in the year. A drug screen of the defendant in August 1999 was positive for marijuana use.

According to the judgments in the record, which were entered on September 23, 1999, the defendant was sentenced as a Range I, standard offender to one year for each of the Class E felonies and two years for each Class D felony. The judgments reflect that each sentence was suspended and that the defendant was placed on probation to be effective as of the date of sentencing. As part of his sentences, the defendant was ordered to perform community service for Goodwill Industries. On December 1, 1999, the community services coordinator prepared a violation warrant citing the defendant's failure to perform any community service and to contact the community service coordinator.

Shortly thereafter, in January 2000, a probation violation warrant was filed alleging the defendant's failure to supply proof of employment, to perform any community service, to pay any fees, costs, or restitution, and to abstain from drug use. At a hearing on May 22, 2000, the defendant stipulated to the facts underlying the violation warrant. The trial court found that the defendant had violated the terms of his probation, but it did not revoke the defendant's probation. Instead, the trial court amended the conditions of the defendant's probation to include the requirement that the defendant enter and successfully complete a drug court program.

Eight days later, on May 30, 2000, the trial court issued a capias for the defendant's arrest because he had failed to appear for the drug court. Thereafter, the record reflects that multiple capiases were issued with corresponding court orders for the defendant's incarceration in 24-hour blocks of time. On October 30, 2000, the defendant was released from the Blount County Jail and ordered to report to a halfway house in Oak Ridge. After further violations of the drug court program rules, the defendant was "dismissed" from the program on January 16, 2001.

The failure to complete the drug court program violated the conditions of the defendant's probation, and on January 17, 2001 a violation warrant was filed. The defendant was arrested on that warrant after which he secured his release on bond. On February 5, 2001, the trial court conducted a hearing. The defendant stipulated to the probation violation. The trial court ordered the defendant to serve 90 days in the Blount County Jail and to serve the balance of his sentence on community corrections.

The defendant's recalcitrant behavior did not abate, and on May 30, 2001, a community corrections violation warrant was issued. The defendant was arrested the following day, and he arranged for immediate release on bond. A hearing on the violation was held on June 29, 2001. As before, the defendant stipulated to the violation. This time, the trial court revoked the defendant's probation and ordered him to serve the original sentence minus 104 days of jail credit.

Less than two months later, the Tennessee Board of Probation and Parole issued a "Probation Certificate" releasing the defendant effective August 24, 2001, with conditions. Approximately four months later, the defendant garnered his fourth probation violation warrant. A hearing was held on February 11, 2002, for which a transcript was prepared and filed with the record on appeal.

At the hearing, Teresa Captain, a probation officer, testified that she was responsible for supervising the release of the defendant. After reporting to Ms. Captain in September and October, the defendant, without explanation, failed to report to her for the next four months. Ms. Captain testified that the defendant made only one payment toward his supervision fees and that she could only verify that he made a single payment of $50 on court costs and fines.

The defendant testified that after he was released on August 24, he lived for a short time with his father, but then he moved in with a female friend. He said that just before Christmas, they were evicted and that since that time he has had no place to live. The defendant was not at that time working; he testified that he had been working at Food City but that he quit that job for better employment "that didn't come through." The defendant's explanation for not contacting his probation supervisor was that he "wasn't around a phone." He insisted that if released from jail, his father would allow him to move in until the defendant could find a job and support himself. When asked why the court should continue his probation, the defendant responded, "This time, I know that it's not kidding around and I have learned this time. . . . And I've learned that, you know, I need to do what needs to be done of me and asked of me rather than do what I want to do." The defendant asked that the trial court consider some form of split confinement.

At the conclusion of the hearing, the trial court found that based on the record up to that point, the likelihood of rehabilitation was "non-existent." Accordingly, the trial court revoked the defendant's probation but specified that the defendant would be eligible for work release. Moreover, the trial court offered the defendant an incentive: "[Y]ou'll have an opportunity to apply to – get a job, apply for work release, and then if you can work and follow the jail rules for a period of time, then I'll be glad to entertain a – listen to a motion to get back out and go back on probation."

This appeal followed.

Our review requires us to visit a familiar corner of the law. When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of his or her probation, the trial court is authorized to revoke probation. Tenn. Code Ann. § 40-35-311(e) (Supp. 2001). When probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension." *Id*. § 40-35-310 (1997).

Whether to revoke probation is a decision committed to the sound discretion of the trial judge. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). The trial court's revocation determination will be upheld on appeal unless there has been an abuse of discretion. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). For there to be an abuse of discretion, the record must

be void of any substantial evidence supporting the trial court's decision that a violation of the probation conditions occurred. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). Evidence of a probation violation is sufficient if it allows the trial court to make a conscientious and intelligent judgment. *State v. Milton*, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984).

The defendant in this case concedes that he has violated the conditions of his probation not once, but on multiple occasions resulting in four revocation warrants. The question becomes whether the trial court was confronted with substantial evidence supporting the decision to revoke the defendant's probation and order service of the original sentence. In our view, the trial court made a conscientious and intelligent judgment. The trial court's patience with the defendant far exceeded what the law requires. Even so, the trial court continued to reach out to the defendant – to persuade him to take responsibility for his actions and to accept the consequences of his behavior. We find no indication in the record that the trial court abused its discretion in revoking the defendant's probation and ordering him into custody to serve his sentence.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE